BALDWIN et al. v. FEDER.

(Supreme Court, Appellate Division, First Department. December 10, 1909.)

1. SALES (§ 82*)—PAYMENT—OBLIGATION OF BUYER.

Where a contract of sale for resale by the buyer did not fix the time within which the buyer should account for the goods unsold, and did not provide for the return of the unsold goods, nor for the refunding by the seller of the money advanced thereon, the law would imply an obligation

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

by the buyer to account at the minimum price after the lapse of a reasonable time to enable him to make sales, and, at the expiration of the contract, as to all goods then unsold.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 230; Dec. Dig. § 82.*]

2. SALES (§ 7*)—CONTRACTS—DISTINGUISHED FROM AGENCY.

The provisions of a contract between a manufacturer and distributor *held* to contemplate that the latter should be a buyer of the goods, and not the selling agent of the maker.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 16, 17; Dec. Dig. § 7;* Principal and Agent, Cent. Dig. § 10.]

3. SALES (§ 77*)—CONTRACTS—CONSTRUCTION—ADVERTISING ACCOUNT.

Defendant manufacturing a patented article appointed plaintiff his sole selling agent for a specified time, and the latter agreed to order and purchase a specified quantity per week, and to account monthly for not less than an average selling price. The contract stipulated for an "advertising fund" made up of a sum reserved by plaintiff out of the price received by him on sales, and provided that the expense of advertising should be paid out of the "advertising fund," and that at the end of every six months any balance remaining in the fund should be paid to defendant. Plaintiff presented accounts of disbursements for advertising, which showed an excess of disbursements over receipts, which excess was in each case carried over to the next six months' account. Defendant made no objections, and did not assert that the account should have been for each period of six months. *Held*, the contract aided by a practical construction provided for an advertising account which should continue until it was closed by showing a balance due defendant.

[Ed. Note.—For other cases, see Sales, Dec. Dig. § 77.*]

4. SALES (§ 77*)—CONTRACTS—ADVERTISING ACCOUNT.

Where a buyer of goods for resale was required to account as buyer for goods resold and for goods not resold, and was entitled to reserve a specified amount for an advertising fund, he was entitled to be reimbursed on account of the advertising account for goods not resold as well as for goods sold to customers.

[Ed. Note.—For other cases, see Sales, Dec. Dig. § 77.*]

Appeal from Judgment on Report of Referee.

Action by Wilmer A. Baldwin and another, as surviving partners, against Harry Feder. From a judgment for defendant entered on the report of a referee, both parties appeal. Reversed, and judgment directed.

Argued before INGRAHAM, LAUGHLIN, CLARKE, HOUGHTON, and SCOTT, JJ.

L. E. Warren (Jacob M. Grossman, on the brief), for appellants. Moses Weinman, for respondent.

LAUGHLIN, J. This action is based on a contract in writing, made on the 16th day of May, 1896, as modified and renewed for a period of three years from the 16th day of May, 1897, by an agreement in writing, made on the 29th day of April, 1897, and further renewed for two successive periods of one year each, the last of which expired on the 16th day of May, 1902. This contract was superseded for the period from February 17, 1899, to May 31, 1900, by a temporary agreement. Under the contracts, the plaintiffs received from

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the defendant'a large quantity of goods. The action is brought to recover a balance which the plaintiffs claim to be due from the defendant on account of their business relations under the contracts.

The first question presented for decision involves the construction of the contract. The plaintiffs claim that they became selling agents for the defendant. On the other hand, the defendant claims that the plaintiffs became purchasers of the goods. The contracts contain many conflicting provisions with respect to the relationship existing between the parties. They contain express provisions which sustain the plaintiffs' theory, and express provisions which sustain the defendant's theory. The contracts are very voluminous. They are set forth in the decision of the referee and discussed at length in his opinion. We do not deem it necessary to restate fully their provisions here. The defendant was the party of the first part and the plaintiffs the parties of the second part to the contract. It was recited in the original contract that the party of the first part had obtained letters patent on an improvement in skirt protectors, and was manufacturing skirt protectors pursuant to the letters patent, to be known as "Feder's Brush Skirt Protector," and the parties of the second part were desirous of obtaining the exclusive right to sell the goods in the United States for a certain period. The party of the first part then agreed that the parties of the second part should be his sole and exclusive selling agents in the United States for said goods during the period covered by the contract, and the parties of the second part agreed that they would not sell similar goods, and that they would—

"order and purchase from the party of the first part not less than three hundred and fifty gross of yards of said goods in each and every week; it being, however, understood and agreed that they shall have the right to have additional orders (over 350 gross of yards per week) filled upon giving a ninety-days notice of such additional orders, which in no event shall, without the consent of the party of the first part, exceed three hundred and fifty gross of yards per week. If additional orders be given the parties of the second part do hereby agree to take the guaranteed amount (350) gross, together with the amount of the additional order for a period of three months after the first delivery under such additional order even though the said period of three months may lap over after the day upon which this contract expires by its terms, and the party of the first part agrees to begin the delivery of the goods under the additional order or orders within the period of ninety days after they are given. * * * They will at no time account to the party of the first part for an average gross selling price less than $4.50 per gross of yards. In case they should conclude it is necessary to sell any goods for less than that price ($4.50), they shall before selling the goods, offer them to the party of the first part at the price for which they propose to sell them; in case he should refuse to purchase them upon these terms, they may then sell them to the trade at such price. But a sale to the party of the first part, or to the trade, at such reduced price shall in no way affect the obligation of the parties of the second part to account for such goods, and pay for the same upon the basis of an average gross selling price of $4.50 per gross yards. * * * The parties of the second part hereby agree to pay for all goods that may be sold by them, and they shall be deemed to be the only debtors of the party of the first part, in regard to all sales of said goods which they may make. On the 15th day of every month, beginning with the month of June, 1896, the parties of the second part shall account for and pay to the party of the first part the total average price of the goods sold by the parties of the second part during the previous calendar month, less the deductions in this agreement provided, and on the 15th day of every month during the term of this contract they shall make a similar accounting and payment for the goods sold during the previous

calendar month. The deductions to be made are the aforesaid precentages on the average gross selling price, the amount to be retained for the advertising account as hereinafter provided; a two per cent. discount upon the net amount after deducting the said percentages and the sum retained for advertising. At no time, however, will they account to the party of the first part for an average gross selling price less than $4.50 per gross of yards. But it is understood and agreed that on the 15th day of June, 1896, they will pay to the party of the first part on account of every gross yards of the said goods received by them during the previous month at least the sum of $3.50, and as soon as the goods so received are sold by the parties of the second part, they will credit the party of the first part with such additional sums as he may be entitled to, calculated in the manner above described and they will account for such additional sums and pay the same over to him with the next month's accounting. On the 15th day of July, 1896, they will make the same payment upon account for the goods received by them during the previous month, and they will account for the average gross selling price on the 15th day of the following month; and in this way they shall make payments and accountings on the 15th day of every month during the term of the contract."

There is no express provision in the contract fixing the time within which the plaintiffs were to account for the goods unsold at the minimum price for which they agreed to account for all goods. Nor is there any express provision for the return of goods unsold and obligatory on the defendant to refund the moneys advanced or paid thereon. If the plaintiffs were purchasers, the law will imply an obligation to account at the minimum price after the lapse of a reasonable time to enable them to make sales, and at the expiration of the contract with respect to all goods then unsold. It does not appear that any accounting for goods unsold was demanded until the expiration of the last renewal contract. We are of opinion that the plaintiffs under the contracts became purchasers of the goods. The provisions indicating a contrary view are fairly explainable upon the theory that the defendant, in giving the plaintiffs the exclusive agency for advertising and selling the goods, was desirous of exercising some control over the price at which they were to be sold and over the extent to which they were to be advertised. We agree with the views expressed by the learned referee with reference to the construction of the contract on this point; and do not deem it necessary to consider the question further.

The remaining questions can best be understood and decided by next considering the defendant's appeal. The learned referee construed the original contract, as supplemented by subsequent contracts between the parties, which are recited in the decision, interpreted in the light of the acts of the parties with respect thereto, as providing for a single advertising account, and not for separate advertising accounts for each six months of the period during which the parties transacted business together. The defendant's appeal challenges the correctness of this construction. The learned counsel for the defendant contends that the contract contemplated that the advertising account should be balanced at the end of each period of six months, and that, if there should then be any surplus therein of moneys credited to the advertising account which had not been expended for advertising, the defendant thereupon became entitled thereto regardless of whether or not the plaintiffs in the next succeeding or any subsequent period of six

months expended more for advertising than was credited to the advertising account pursuant to the provisions of the contracts. The original contract, as already stated, was made on the 16th day of May, 1896. The plaintiffs rendered monthly statements to the defendant of the goods received under the contract, and accounted therein for goods sold to customers on the basis of the actual sales, deducting the percentages as provided in the contract, to which they were entitled and the amount provided in the contract to be deducted for the advertising account, and also of the goods received which had not been sold to customers, and as to those accounted according to the contract for the amount which they were required to pay to the defendant before sales were made. The first account, however, which the plaintiffs rendered to the defendant, concerning the advertising account, other than showing deductions in the monthly statements of the amounts to be credited to the advertising account, was an account, the last item of which is dated the 31st day of May, 1899, and it was probably received by the defendant shortly after that date, for he testified that he received it shortly after receiving a letter from the plaintiffs, dated May 18, 1899. This account showed disbursements covering a period from the date of the contract to the 31st day of May, 1899, on account of advertising aggregating the sum of $75,780.43, and the total of credits on account of the advertising account during the same period of $27,-732.72, leaving a balance of $48,047.71 paid out by the plaintiffs for advertising in excess of the amount with which the advertising account was credited. These accounts were continuous for the period, and there was no separation or balancing at the end of each period of six months. The debit and credit items, however, are dated, and the amounts received and expended during each period of six months can be ascertained from the account, and by calculation therefrom it appears that during each period of six months the plaintiffs expended more for advertising than the account was credited with. Therefore, on the defendant's construction of the contract, there would at no time during that period have been a balance in the advertising account to which he would have been entitled. The defendant made no objection to this account, and did not assert any claim that the account should have been for each period of six months, or that no more should have been charged than was received for that account. The next advertising account rendered by the plaintiffs to the defendant is under date of September 29, 1900. In the first item of this account the account was charged with the balance of $48,047.71, being the excess shown by the preceding account of moneys expended by the plaintiffs over and above the moneys received to the credit of that account. Following this item the account was charged with the various items of disbursements on account of advertising, the last of which was under date of September 25, 1900. The total amount of the debits thus shown was $74,336.03. This was followed by items of amounts with which the account was credited, the first item of which was dated June 30, 1899, and the last was dated September 29, 1900, and they showed that the total of the debit charges exceeded the total of the credit charges by the sum of $25,028.28, which sum was inserted at

the foot of the credits as a balance for the purpose of balancing the account, and this, added to the credit items, showed the same figures as the total of the debit charges. · We find no evidence, other than the date, showing when this account was rendered. It does not appear that the defendant made any objection to this account, or questioned the manner in which it was made up, at least not until he wrote a letter to the plaintiffs, under date of February 18, 1902, which will be considered presently.

The next account of the advertising rendered by the plaintiffs to the defendant is under date of July 31, 1901, and the first debit item of this account charges it with the balance of $25,028.28, shown by the last preceding account as having been expended by the plaintiffs in excess of the moneys received to the credit of the account. It contains numerous debit items, commencing with October 2, 1900, and ending with July 26, 1901, which, with the first item, aggregate the sum of $27,742.38. It showed items of credit on account of moneys received for the advertising account, commencing with October 31, 1900, and ending with July 31, 1901, aggregating $15,741.92. To this is added a credit of $7 on account of a debit item for advertising which was canceled, and then a balance was shown of $11,993.46, which represents the excess of moneys disbursed for advertising, considering the account as continuous from the start, over and above the amount received. There is no evidence that the defendant objected to any of these accounts or questioned the manner in which they were made up. There are certain letters in the record however, written by the defendant to the plaintiffs upon which he relies as indicating that he objected to the plaintiffs' theory that there was to be one continuous advertising account. The first of these letters is under date of February 18, 1902, and it refers to some statement of account rendered by the plaintiffs to the defendant, which, however, we do not find in the record, and evidently it was a monthly statement of the account of goods received and sold. In this letter the defendant objects to the theory upon which the account was made; the plaintiffs evidently having treated the payment made on account of the goods received, which had not been sold, as moneys advanced. The defendant asserted that the goods were purchased by the plaintiffs. Then follows this statement in the letter:

"The result shown by your statement seems to be brought about by your deductions for the advertising fund for the purpose of reimbursing yourselves for amounts paid several years ago for advertising. The intent and spirit of the contract was that the reserved amounts were to be expended for continuous advertising, during the term of the contract. The fact that the advertising has not been continuous, has been a great damage to the business."

The next letter bears date February 27, 1902, and is in answer to letters received from the plaintiffs, and it merely reiterates, in general terms, the defendant's claim, referred to in his letter of February 18, 1902. The next letter is dated March 18, 1902, and refers to a statement of account under date of March 15th, and a letter from the plaintiffs. It is therein asserted that the statement of the account is incorrect and is based on an erroneous construction of the contract, and refers to his letter of February 27th. The defendant wrote another

letter, under date of April 17, 1902, in which he asserted that a statement received from the plaintiffs under date of April 15th was incorrect for the reasons which he had assigned in his prior letters. The last letter, relating to this subject, is under date of May 16, 1902, and refers to a statement received by him under date of the 15th of that month, which he asserts was incorrect, and he again refers to his former letters. The material provisions of the contract upon which the question as to whether there was to be a separate advertising account for each period of six months, or as to whether it was to be a continuous account, depends, will now be stated.

The original contract, so far as material to this question, provides as follows:

"Seventh. Out of the gross price received by the parties of the second part [plaintiffs] for each gross yards of said goods there shall be reserved by the parties of the second part the sum of fifty cents, and the amount so reserved shall constitute what is herein designated as the 'Advertising Fund.' The parties of the second part are to have the sole charge of the means contrived or selected by them in advertising the aforesaid goods which shall be described in any printed or written matter as 'Feder's Brush Skirt Protector.' The parties of the second part will act upon all reasonable suggestions in regard to the advertising that may be made by the party of the first part if the same are adopted by them. The expense of advertising shall be wholly paid out of the said so-called 'Advertising Fund' and at the end of every six months, any balance that may remain in said fund after satisfying the expenses and obligations for advertising, shall be paid to the party of the first part."

This was amended by a supplemental contract under date of April 29, 1897, which, so far as material, provides as follows:

"Eighth. The seventh paragraph of the said contract, of May 16th, 1896, is hereby eliminated and in lieu thereof, it is agreed and understood that out of the gross price received by the parties of the second part for each gross yards, when sold, there shall be reserved by the parties of the second part a certain sum as hereinafter fixed, and the amounts so reserved shall constitute what is herein designated as the 'Advertising Fund.' The parties of the second part are to have the sole charge of the means contrived or selected by them in advertising the aforesaid goods, which shall be described in any and all printed or written matter as 'Feder's Brush Skirt Protector.' The parties of the second part will act upon all reasonable suggestions in regard to the advertising that may be made by the party of the first part if the same are adopted by them. The expense of advertising shall be wholly paid out of the said so-called 'Advertising Fund,' and at the end of every six months any balance that may remain in said fund after satisfying the expenses and obligations for advertising shall be paid to the party of the first part. The term 'advertising' in this contract shall include all written advertisements, all advertisements in printed publications and newspapers, also circulars, posters, cabinets, signs and placards, all samples that may be sent gratis to the trade and postage for mailing said matter and money paid to noted persons for use of their names. The amount to be reserved for advertising, as aforesaid, on all goods sold by the parties of the second part, after July 31, 1897, shall be as follows: 18¾ cents per gross yards on the first 54,000 gross yards of goods. 43¾ cents per gross yards on the next 54,000 gross yards of goods. 50 cent per gross yards on the next 54,000 gross yards and upon all goods above that amount sold under this contract or under any renewal of the contract of May 16, 1896."

On the 17th day of February, 1899, the parties entered into a temporary contract, which for the time being superseded the other contracts with respect to their business relations, but that contract was terminated by mutual consent on the 31st day of May, 1900, and the

business relations between the parties during the time it remained in force were. adjusted according to its provisions, and no question with respect thereto is presented by this appeal. It is significant that the contract provides for an advertising account, not for advertising accounts. The practical construction of this contract by the parties removes any doubt there might otherwise be with respect to its meaning. It is susceptible of the construction that it was intended that there should be an advertising account which should continue until it was closed, according to the terms of the contract, which would not be until it showed a balance due to the defendant, and that, treated as a continuous account, it never did. Therefore we agree with the construction placed upon the contract by the learned referee in this regard also, and are of opinion that the defendant's contention is untenable. · This is the only point presented by the defendant's appeal.

When the business relations between the parties were terminated on· the 16th day of May, 1902, the plaintiffs had paid out on account of advertising as claimed by their counsel in his points the sum of $4,021.69 more than had been credited to the advertising account; but the accounts as presented in the record indicate a large balance. The goods which had been received by the plaintiffs and for the sale of which to customers they had not accounted to the defendant at that time aggregated $11,589^{112}/_{144}$ gross. Construing the contract as providing for a sale of these goods by the defendant to the plaintiffs, as we do, the plaintiffs were obligated to account to the defendant therefor at not less than $4.50 per gross, making the purchase price thereof the sum of $52,154.01. The plaintiffs contended upon the trial that, if the contract is to be construed as a contract for the purchase of the goods by them, they are entitled to deduct from the purchase price of these remaining goods, on account of the advertising account, the amount which the contract provides shall be deducted from the purchase price and credited to the advertising account in case of a sale of the goods, not to the entire extent of such amount, because the balance expended for advertising would not warrant that amount, but to a sufficient extent to reimburse them for the excess which they have expended on account of advertising over and above the amount with which the advertising account was credited; in other words, the said sum of $4,021.69. This contention was overruled. On this point we are of opinion that the learned referee erred. Although the plaintiffs did not sell the goods to customers, and account at the selling prices, yet since they became purchasers and the contract was terminated, they became obligated to account to the defendant as purchasers, for the minimum price at which, in any event, the contract provided they should account for the goods. Therefore, under the contract, this became a sale of these goods to the plaintiffs, and they were, we think, as much entitled to be reimbursed on account of the advertising account for a sale forced upon them by virtue of the provisions of the contract as for a sale made to customers.

We are also of opinion that the learned referee inadvertently fell into error in adjusting the claims of the parties with respect to these goods which had been delivered by the defendant to the plaintiffs and

which had not been sold to customers, according to the terms of the temporary contract, instead of in accordance with the terms of the original contract as modified and renewed. The learned counsel for the defendant does not claim that the temporary contract governed in this regard, but he asserts that the judgment is more favorable to the plaintiffs than it would have been if the rights of the parties had been adjusted pursuant to the provisions of the former and subsequent contracts. Counsel for the plaintiffs, however, disagrees with this view, and insists that, if the rights of the parties had been adjusted under the former and subsequent contracts, the result would have been more favorable to his clients. We are of opinion that the contention in this regard made in behalf of the plaintiffs is correct. The purchase price of the goods on hand, $11,589^{112}/_{144}$ gross, at $4.50 per gross, would be $52,154.01. From this amount the plaintiffs were entitled to deduct for commission 10 per cent., aggregating $5,215.40, and 50 cents per gross on account of the advertising account to an extent sufficient to reimburse them for the excess of $4,021.69, paid out on account of advertising over and above the amount with which that account was credited. They were also entitled to deduct from this balance by virtue of the provisions of the contract, 2 per cent. in addition aggregating $858.34, leaving a balance of $42,058.58. The referee found in accordance with a claim made by the plaintiffs to the defendant in a letter under date of May 16, 1902, that they had paid on account of the goods on hand the sum of $43,308.07, but in that letter the plaintiffs stated that the goods on hand aggregated $11,548^{118}/_{144}$ gross yards, which is less than the number of gross yards with which the referee has charged them. He charged them with the number of gross yards which they conceded in an account rendered under date of June 2, 1902, they had on hand at the close of May 16, 1902, which is the date of said letter. In this account they claim to have paid the defendant on account of these goods the sum of $43,420.56, which is $112.49 more than they have been allowed by the referee. They claim, and evidently the referee intended to allow their claim in this regard, that they had paid to the defendant the sum of $3.75 per gross for all of the goods which they had on hand at the close of their business relations. That was the amount which they were required to pay before selling the goods received by them under the original contract, as modified, but, during the early period of their business relations, they were required to pay only the sum of $3.50 per gross before making sales, and it is to be inferred that some of the goods on hand at the close of their business relations were goods which they received during the period when they were required to account before sales for only $3.50 per gross, although the evidence on that subject is not definite. If they had paid the defendant the sum of $3.75 per gross for all of the goods on hand at the termination of their business relations, it would seem that the learned referee inadvertently erred in taking their letter instead of their account as the basis for determining the amount which they had paid to the defendant on account of these goods, and that they should have been credited with payments aggregating $43,420.56, instead of $43,308.07, on account of these goods, which would be more

by $1,361.98 than they owed. This correction would leave a balance of $1,361.98 owing to the plaintiffs. The plaintiffs concede that the defendant is entitled to a further credit of $401.76 on account of "limitation goods not paid for," leaving on making the correction lastly discussed a balance of $960.22 due to the plaintiffs from the defendant. The plaintiffs claim a further credit of $1,077.18 on account of a balance of $426.44 claimed to be due from the defendant on account of sales made in the month of February, $252.72 on account of sales made in the month of March, $304.87 on account of sales made in the month of April, and $93.15 on account of sales made in the month of May, 1902, for which counsel in his brief asserts that accounts were rendered in those months. Accounts for each of these months were offered in evidence by the plaintiffs, but are not printed in the record. We find one account in the record under date of April 15, 1902, purporting to show a balance due to the plaintiffs from the defendant "on March account" of $466.26, and showing a deduction therefrom of items aggregating $39.82, and a balance claimed to be due to the plaintiffs of $426.44, which corresponds in amount with the claim asserted by counsel in his brief with respect to the sales for February, but it does not purport to be the account of sales for February. No explanation is made in the points for the plaintiffs of the theory upon which the vendor would become indebted to the vendees on account of sales, and we are cited to no evidence tending to show an overpayment other than that which has been considered herein with respect to the advertising account. The record contains some indefinite evidence tending to show that more goods were shipped to the plaintiffs than they had ordered, and that the defendant was entitled to ship to them under the contracts, and that some of the goods shipped to the plaintiffs for which they had paid in part were returned to the defendant to be redyed, and that perhaps all of such goods were not again returned to the plaintiffs. It may be that this claim with respect to a further credit of $1,077.18 is based on those transactions, but the findings do not sustain the plaintiffs' claim, and the question may not be decided as one of law. As we view the evidence, assuming the excess expended for advertising over the amount with which the advertising account was credited to be as claimed by counsel for the plaintiffs, and assuming that the plaintiffs paid the defendant $3.75 per gross for all of the goods which they had on hand at the expiration of the contract, the plaintiffs should have recovered the sum of $960.-22, but the judgment is for the defendant and to authorize a recovery by the plaintiffs involves changes in the findings of fact, and therefore we cannot modify the judgment without consent.

It follows, therefore, that the judgment should be reversed and judgment directed in accordance with the view herein expressed, the judgment to be settled on notice. If, however, either party insists that a new trial is necessary, such a new trial will be ordered before the same referee. All concur.